Good afternoon, counsel. We are going to continue with our final case of the day. This is number 20-1779, Paula McAllister v. Innovation Ventures. We're going to begin for the appellant, Mr. Lehman, with you. Thank you, Judge. May it please the court, Mark Kelly Lehman on behalf of Paula McAllister. Ms. McAllister respectfully request this court reverse the district court's decision granting summary judgment in favor of her employer on her Americans with Disabilities Act claim. When an employee is injured outside the workplace, Innovation Ventures, my client's employer, refuses to accommodate any medical restriction other than to grant leave. The issue is whether Paula McAllister could have returned to work at Innovation but for this policy. The first, the evidence shows that McAllister was qualified for and could have returned to work as a machine operator with accommodations. Second, the evidence shows that McAllister could have returned to work at one of the vacant assembly worker positions without accommodations. Third, Innovation's refusal to accommodate non-work-related injuries obstructed, delayed, and caused a breakdown in the interactive process. Innovation is not entitled to avoid liability because it caused that breakdown. Finally, McAllister's application for disability payments were entirely consistent with her Americans with Disabilities Act claims. Now I'm turning to the first point, Your Honors. Forgive me, when deposing the physicians, the treating physicians, did the plaintiff ask if the doctors would have cleared her sooner if they had known that some of her restrictions could be accommodated? In other words, does she have any testimony or expert opinion that she would have been able to return to work with accommodations of some kind? Your Honor, the her treating physicians, in this case we were probably referring to Dr. Cashman, who was her spinal surgeon, and physician's assistant, Chris Lee, who was Dr. Cashman's subordinate. When asked by defense counsel whether they would have let her return to work with, return to work, she said his opinion depended upon what what her duties were at her job. And then in cross-examination, when McAllister asked Dr. Cashman if his opinion would further depend upon which details of her job could have been accommodated, he says that also what he answers affirmatively that that also would have been relevant. But Your Honor, also when it comes to physician's assistant Chris Lee, we can't ignore the plain language of her letter to innovation, which was that among the reason that she was recommending that McAllister remain off work was because of her lifting restrictions, and then this the vague statement that she doesn't remember why exactly she puts it in there, and other obligations or something to that effect, Your Honor. And so I think that the testimony from both of her treating physicians indicates that their opinions were contingent upon the nature of her job and the accommodations that were available. If there was no way, reason to that they would have altered their opinion, physician's assistant Chris Lee surely would have just said can't come off work, she's completely disabled, rather than say she can't return to work due to lifting restrictions. If the lifting restrictions were not absolutely precluded her from any work, then it's unusual that Mrs. Chris Lee would expressly put that into her letter. Furthermore, her supervisor, Dr. Cashman's much more direct in his testimony and says it depends on what she did in her manufacturing job. Um, so Your Honor, the short answer to your question is, do I? Did they testify that their opinions could have changed? If combinations were available, then yes. Uh, it appears that Guardian, the long term disability provider, took into account whether she could work with accommodations and decided that it's a October 2018 she could return to work. Doesn't that somehow suggest that Guardian considered her unable to work prior, you know, even with accommodations prior to October 18th. As far as I can, as far as the record reveals, Miss Rovner or Judge Rovner. I'm sorry. Don't know. Um, when my client, Ms McAllister, applied for, uh, long term disability, she was very explicit that she was terminated and couldn't work because her employer wouldn't accommodate her injuries. So this isn't a situation where she says I can't work in any capacity. She explicitly states in her applications that she can't work because her employer refuses to accommodate her disabilities. So this is this is unlike, um, the opus team decision from this court where the there was this unambiguous claim from the claimant in their to their Arisa plan that they could not work whatsoever. And there was no explanation to reconcile their claim to their to their in their benefits application with their claims under the Americans Disabilities Act. Did she preserve an argument in the district court that innovation refused to engage in the interactive process? I'm sorry, Judge, did you ask? Did she preserve that argument? Yeah, that that innovation refused to engage in the interactive process? Yes, Your Honor. And I would refer to the district court opinion of page nine when they even construed when the district court construes McAllister's argument, they state quote the McCall excuse me, the district court states McAllister argues quote that the only reason her doctors prevented her from returning to work was that innovation was unwilling to offer any accommodations period. Thus, she argues, it was innovation's own refusal to accommodate that left an extended leave as her only option period. Close quote. So you're talking about refusing to engage in the interactive process. Yes, Your Honor. And McAllister argued in her brief that innovation's unlawful failure to engage in the interactive process makes a multi month period of medical leave the only option slash accommodation available to her. And that's in the response to summary judgment at 17. It's a headline. Um, that our argument here was this is not a severance in case because the only reason she keeps asking for leave is because innovation doesn't engage in the interactive process and accommodate any other sort of request for people who are injured outside the workplace. Furthermore, Your Honor, my client argued quote because innovation would not accommodate McAllister's lifting restrictions or modify the machine operator activities, McAllister is forced to choose to pursue the only accommodation available to her dash a leave of absence period. Close quote. So, Your Honor, this argument was fully briefed to the district court and with the argument being listen, please, it's inappropriate to apply severance. And in this case, because the whole reason that my client had to keep asking for leave is because the her employer foreclosed any other options for her. Your Honor, I would reserve the remainder of my time for rebuttal. Please. Thank you, Mr Lehman. We'll now move on behalf of the app. Believe is Earnhardt to you. Good afternoon, Your Honor's Tammy Earnhardt representing Innovation Ventures. This case in its simplest terms is about an individual who is in an unfortunate accident. And according to the information provided to Innovation Ventures from her medical providers was unable to work in any capacity for an extended period of time. Throughout this case, the plaintiff has attempted to reframe her arguments, and she continues to do so here to avoid summary judgment in favor of Innovation Ventures. The district court correctly found that these efforts were unavailing, and we respectfully request that this court affirmed the findings. I plan to address three topics today. One of which gets to your points, Judge Rovner. The district court correctly held that the plaintiff was not a qualified individual with a disability. The has a separate reason for summary judgment that the district court correctly held that the representations plaintiff and her medical providers made for the purpose of obtaining disability benefits prevent her from now claiming she was able to work. And then finally, the plaintiff waived several of her in the appellate briefing that she was able to work for just over a month period during her extended leave. None of plaintiff's arguments change the undisputed fact that her medical providers did not release her to perform any work whatsoever for well over six months and arguably could have been and still has been over a year. We actually don't even know if Ms. McAllister has returned to any form of work. Under Severson, this results in a finding that plaintiff was not a qualified individual with a disability under the Americans with Disabilities Act. To be qualified, she has to be able to engage in the essential functions of her role. And as Severson pointed out, attending work is an essential function of your role, being able to work, particularly when you're a machine operator. Ms. McAllister has evidence that innovation refused to discuss possible accommodations when she was injured. That left her with no accommodation other than a lengthy leave of absence. When we construe the facts in favor of a medically possible, when innovation's refusal to discuss them caused the very gaps in the medical record that you're seeking to hold against her. Well, Your Honor, the record doesn't actually show that her refusal to or that innovation's refusal to discuss accommodations should that be true, which we disagree with. But that that was a basis or that would have changed her medical doctor's opinions. In fact, we discussed that issue with April Chrisley, the physician's assistant that Mr. Lehman referred to earlier. And we asked her if you had had a conversation with your patient about innovation not providing accommodations, would that have, would you have documented it? She said, yes, I would have documented it. It would have been in my medical records. So, you know, the natural chain of events was that as the plaintiff alleges, she didn't discuss her job requirements with her doctors. And then she didn't discuss the restrictions that could be provided or innovation's failure, allegedly, to provide accommodations. And so her doctor's only conclusion or the natural conclusion from that chain of events is that her doctors thought she wasn't able to work at all. And that's supported by Dr. Cashman's statements that she wasn't even able to do an office job. Now, Mr. Lehman stated and plaintiff stated that she was only only had lifting restrictions. That's not accurate. A close reading of April Chrisley's document, even the one on April 24th of 2016, she lists a myriad of other problems that the plaintiff faced. And it's a litany of both physical and cognitive issues. It includes things like dizziness. It includes pain in her hips. It includes a variety of different issues. And while plaintiff would have you focus on the one small statement in that letter about due to lifting restrictions and other activities, which is really the key phrase, it wasn't simply her lifting restrictions that her doctor said caused her to be unable to work. It was this long list of issues that she had, unfortunately, from this car accident and that continued for an extended period of time, so much so that she wasn't able to return to work after a six month extended leave. Her doctor said again in October that she was unable to do any kind of work whatsoever. The doctors reiterated that in November. She was unable to do any kind of work until she fulfilled this neurological examination that was needed. And then our expert, who was the doctor that was performing that neurological examination, stated that she wouldn't be able to return to work until maybe around June of 2017, which would have created a one year leave, if not more. And that's the exact kind of leave that Severson said was not a reasonable accommodation under the ADA. Now, plaintiff has characterized Dr. Cashman's testimony. What we would submit is a bit inaccurately. He testified that she could not perform an office job with her limitations and could not perform a manufacturing job with her limitations. Now, on cross-examination, when there was a line of questioning regarding what Dr. Cashman considers when he looks at returning somebody to work, yes, he did state that he considers the job requirements. He considers whether or not employers can accommodate them. But there's no connection between the plaintiff's condition and those simply what he would normally consider. And having considered her as a whole and all of her limitations, he told Innovation, and Ms. Chrisley told Innovation, she was unable to return to work at all. And so that's what Innovation relied upon. According to this court in Stern and other cases, that is what the defendant is allowed to rely upon. We're providers, not statements of her own where she says she can return to work, not statements of her co-workers, sisters, friends, boyfriend. It really is her medical providers that can provide the information to Innovation related to a return to work. So the failure of the alleged go ahead. Could you answer a bottom line question for me, please? Did Innovation refuse to discuss anything other than a leave of absence? I would submit no, Judge. There wasn't an opportunity for Innovation to discuss anything other than a leave of absence because of the information they were getting from her doctor. She was told, or Innovation was told, she could not return to work. They never got to the point where there was something to discuss other than that. And there's no obligation for an employer to wait indefinitely until such opportunity arises. Now plaintiff claims that also that her statements in her disability paperwork are not contradictory to her claims that she was able to work. We submit that that's inaccurate. This court in Cleveland did not create this broad exception that says that, you know, as long as there's a possibility possibly that you could have returned to work, it's okay to do both. What Cleveland established was this possible claim that the social security records are not contradictory. And so if you take a close look at those records, at both her long-term disability and her social security disability applications, you're going to see not only did she say directly, I cannot work, but she also listed a long, a long list of issues she had. And it's so unfortunate, but she couldn't do so many of her own daily activities. And if you take that as a whole, she represented to the court properly granted summary judgment. And we ask that you affirm. Thank you, Ms. Earnhardt. Mr. Lehman, we'll go back to you for rebuttal. Yes, your honor. Thank you. My client, after she had completed her surgery called innovation and spoke to them about what would be required for her to return to work and whether restrictions could be lifted. She was told that she can't come back to work if she has any restrictions. And she specifically testified that she spoke about lifting restrictions in particular with innovation. She then follows up with a meeting with her doctor, in this case, the physician's assistant, Chris Lee, who then says that she will not allow my client to return to work due to lifting restrictions. Your honor, our position is quite simply that innovations refusal to accommodate Americans, or excuse me, even refusal to engage in the interactive process is what disrupted and obstructed and delayed the interactive process and caused my client to have any further discussions with her doctors about what accommodations would be necessary for her to return to work. Her employer says no accommodations are available. If you have any lifting restrictions, you can't come back. Your honor, I think then the issue is, hey, but for that conversation, could she have come back? We have evidence that she could have come back with accommodations, the machine operator job. And then furthermore, she could have come back to work at the assembly job. And it's important to discuss what the assembly job is. These are about two ounce bottle, plastic bottles of energy drinks that you put into boxes and you that to the extent that innovation has ever tried to construe this job is something more onerous, more complicated, more mentally taxing than that it is not. And the record bears that out, your honor, my client, and she's been able to engage in the interactive process with her employer and been able to engage in a fruitful discussions with her doctors, we would have seen a different result. Thank you very much for your time. Thank you, Mr. Lehman. Thank you, Mr. Ms. Earnhardt. The case will be taken under advisement and the court will be in recess. Thank you.